**Rev. Robert A. WHELAN, Pastor of St. Lawrence Church at Knottsville, Etc., Appellants,**

v.

**Wilbur PAYNE et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 9, 1960.

Rehearing Denied March 17, 1961.

Sandidge & Sandidge, Owensboro, for appellants.

William G. Craig, Byron, Sandidge, Holbrook & Craig, Owensboro (John S. Moremen, Owensboro, of counsel), for appellees

MILLIKEN, Judge.

This case involves a judgment awarding title by adverse possession of land assertedly charged with a testamentary trust for the poor. An interpretation of the will itself is determinative of the appellant's claim.

John C. McBride died testate in 1916, devising his property (except a colt) to his wife by the following language:

"* * * now I desire that my wife Mary Louisa McBride shall have all the rest that I possess during her life time or during the time that she remains my widow but should she marry again, and cease to be my widow then *the* I desire that all that I have willed her ceases to be her property and I want it to go for charitable purposes, to be placed in the hands of the pastor of St. Lawrence Church to be given to the poor and the needy, as the Priest may think best * * *."

By codicil executed September 11, 1911, John C. McBride expressed a desire for the property to be sold to the tenant, Thomas Christ, if either party felt it advantageous to negotiate:

"I, John C. McBride now desire to add this to my above Will and Testament. I desire that my wife Mary Louisa McBride may have the right to sell the farm and land that I have willed to her if she so desires to Thomas Christ if he should want to buy it, and I desire that the said Thomas Christ shall be allowed to live here on the place, and have all the time he wants, or a sufficient length of time to pay for said farm. This is my last Will and Testament.

"This September 11, 1911."

Mrs. McBride died in 1928, but the then pastor of the St. Lawrence Church made no claim to the property on behalf of the "poor and needy."

In June, 1939, Wilbur Phelps obtained the property at a master commissioner's sale. The then pastor of the church was not made

a party to the judicial sale. In September, 1943, the appellee Wilbur Payne received a duly executed warranty deed from Phelps conveying the subject property. Both parties cultivated and farmed the land, paid ad valorem taxes, erected fences and occupied the acreage openly, hostilely and notoriously to well defined boundaries. In 1948 oil leases were executed on the land, and in 1952 Father Whelan, the appellant, pastor of the St. Lawrence Church, notified Payne that he (Father Whelan) held the land in trust, so the drilling for oil stopped. On August 14, 1953, Father Whelan filed this action for a declaration of rights under the will. The defendants (appellees) contended that Father Whelan was not properly qualified to file such an action, so on March 11, 1955, an order was entered qualifying Father Whelan as successor trustee and his amended complaint was filed on that same day.

Since no issue of fact appeared to be involved, the chancellor withdrew the case from the jury and decided that appellee Wilbur Payne and his grantor had been in adverse possession of the land "for a period of over fifteen years dating from June 28, 1939, prior to the tolling of the statute of limitations on March 11, 1955." The appellant concedes that June 28, 1939, was the date adverse possession began, if it ever began. By statute in this state, a testamentary trustee must receive letters of appointment from the county court before entering upon the execution of the trust. KRS 395.001 and 395.105.

Before reaching the question of adverse possession, the chancellor assumed that the appellant had some vestige of right under the will although the judgment does not say so. Without finding it necessary to adjudge what sort of an estate the widow received under the will, it is the opinion of this Court that any interest the appellant may have under it is answered by the wording of the will itself. The appellant got no interest unless the testator's widow "should marry again, and cease to be

my widow." See Ramsey v. Holder, Ky. 1956, 291 S.W.2d 556. She did not marry again, so she did not cease to be his widow before her death in 1928. It is obvious too from the codicil that the testator contemplated other disposition of the property if his widow cared to make it. As a consequence, it is our conclusion that the appellant got no rights under the will and attendant circumstances which made him a party in interest entitled to contest the title by adverse possession which is asserted by the appellees.

The judgment is affirmed.